O

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

LYN GOTTUSO,

              **Plaintiff,**

       **v.**

CAROLYN W. COLVIN,[1]
**Acting Commissioner of Social Security,**

             **Defendant.**

)
)
)
)
)
)
)
)
)
)
)
)
)

NO. SACV 12-01705-MAN

**MEMORANDUM OPINION**

**AND ORDER**

## I.  INTRODUCTION

Plaintiff filed a Complaint on October 10, 2012, seeking review of the denial of plaintiff's application for a period of disability and disability insurance benefits ("DIB").  On November 8, 2012, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge.  The parties filed a Joint Stipulation on August 19, 2013, in which: plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the payment of benefits or, alternatively, for further administrative proceedings; and the

---

[1]      Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013, and is substituted in place of former Commissioner Michael J. Astrue as the defendant in this action.  (*See* Fed. R. Civ. P. 25(d).)

1
2
3

Commissioner requests that her decision be affirmed or, alternatively, remanded for further administrative proceedings. The Court has taken the parties' Joint Stipulation under submission without oral argument.

4

5

## II. PROCEDURAL HISTORY

6

7
8
9
10
11
12

Plaintiff filed an application for a period of disability and DIB on November 6, 2009. (Administrative Record ("A.R.") 11.) Plaintiff, who was born on January 6, 1955 (A.R. 22),[2] claims to have been disabled since May 1, 2008, due to Meniere's disease, dizziness, double and blurred vision, headaches, depression, anxiety, fibromyalgia, asthma, and pain in her back, neck, shoulders, and head. (A.R. 11, 16, 33, 237). Plaintiff has past relevant work experience as an administrative assistant and child care attendant. (A.R. 22.)

13

14
15
16
17
18
19

After the Commissioner denied plaintiff's claim initially, plaintiff requested a hearing. (A.R. 11.) On April 6, 2011, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Kevin M. McCormick (the "ALJ"). (*Id.*) Vocational expert Susan L. Allison also testified. (*Id.*) On May 27, 2011, the ALJ denied plaintiff's claim (A.R. 11-24), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-3). That decision is now at issue in this action.

20

21

## III. FACTUAL BACKGROUND

22

23
24
25

Plaintiff is a 59-year-old, obese woman with a host of medical problems, as discussed in detail below, who has not engaged in substantial gainful work activity since May 1, 2008. (A.R. 13.) Since that time, plaintiff has attempted to work on two occasions, once from November 20,

26

27
28

[2]      On the alleged disability onset date, plaintiff was 53 years old, which is defined as an individual closely approaching advanced age. (A.R. 22.) Plaintiff subsequently changed age categories to that of advanced age. (*Id.*)

2

2008, through December 5, 2008, for 24 hours per week, and again from March 1, 2009, through April 1, 2009, for 40 hours per week. (*Id.*) With respect to the first work attempt, plaintiff stated that it was a temporary position, and it was all she could handle due to her condition. (*Id.*) With respect to the second work attempt, plaintiff "believes that her medical condition affected the performance of her duties and that she was terminated for this reason." (*Id.*)

### A.   Plaintiff's Function Report

On February 22, 2010, plaintiff completed an Adult Function Report. (A.R. 215-22.) Plaintiff indicated that she usually watches television and reads, and on a good day, she makes lunch and dinner and does some housework. (A.R. 215.) Plaintiff reported that her fibromyalgia "keep[s her] up [at night] with muscle pain" and, thus, affects her sleep. (A.R. 216.) Plaintiff indicated that she can prepare her own meals, unless she is feeling dizzy. (A.R. 217.) On a good day, plaintiff reported that she can make her bed, put dishes in the dishwasher, dust, vacuum, and clean the bathroom sink. (*Id.*) If she is experiencing a "bad day," however, she "do[es no]t clean." (*Id.*) Plaintiff reported that she "rarely go[es] outside," and she does not drive, because she experiences dizziness and has vision problems. (A.R. 218.) With respect to social activities, plaintiff reported that she occasionally uses Facebook to connect with her family, and she attends church weekly. (A.R. 219.)[3] Plaintiff indicated that her impairments/limitations affect her ability to lift, squat, bend, stand, reach, walk, kneel, climb stairs, see, complete tasks, and concentrate. (A.R. 220.)   For example, plaintiff reported that she only can walk for 3/4 of a mile before she must rest, and she must use a cane when walking. (A.R. 220-21.)

///

///

///

---

[3]   As discussed below, plaintiff testified at the Administrative Hearing that she sometimes is not "up to" going to church. (A.R. 44.)

1

2

### B.   Ruth Gottuso's Third Party Function Report

3

Plaintiff's mother, Ruth Gottuso, completed a Third Party Adult Function Report on February 22, 2010. (A.R. 223-30.) Ms. Gottuso reported that plaintiff's daily activities include fixing breakfast or lunch, watching television, reading, and going on Facebook. (A.R. 223.) Additionally, Ms. Gottuso reported that plaintiff is often in pain due to her fibromyalgia and, as a result, is up "all night long." (A.R. 224. ) Ms. Gottuso indicated that plaintiff is able to clean the bathroom and kitchen countertops, vacuum in "short spurts," wash dishes, dust, and make her bed. (A.R. 225.) However, Ms. Gottuso, not plaintiff cleans the bathtub, washes the laundry, and does all the deep cleaning. (*Id.*) Ms. Gottuso indicated that plaintiff sometimes experiences dizziness while performing her chores and will take a break or stop altogether. (*Id.*) Ms. Gottuso noted that plaintiff goes outside "very little." (A.R. 226.) Ms. Gottuso accompanies plaintiff when she walks, because even though plaintiff has a cane, she has poor balance and falls. (*Id.*) In addition, Ms. Gottuso drives plaintiff, because plaintiff becomes confused and dizzy while driving and has difficulty staying in her lane. (*Id.*) Ms. Gottuso indicated that plaintiff usually attends church weekly, unless she is having a "dizzy day." (A.R. 227.) Ms. Gottuso also indicated that plaintiff's impairments/ limitations affect her ability to lift, squat, bend, reach, walk, kneel, climb stairs, see, and complete tasks. (A.R. 228.) For example, Ms. Gottuso noted that plaintiff rests between tasks and can only walk for one block before needing to rest. (*Id.*)

20

21

### C.   Administrative Hearing

22

23

1. Plaintiff's Testimony

24

25

At the administrative hearing, plaintiff testified that she has Meniere's disease and suffers from:  daily dizziness, lasting anywhere from five minutes to all day long; double and blurred vision; muscle spasms and pain in her back; shoulder and neck pain; daily "massive headaches"; bipolar disorder; mood swings; panic attacks; depression; anxiety; sleeping problems; and

concentration problems.   (A.R. 33, 41-44.)   Plaintiff further testified that she: must change positions every 20-30 minutes while seated because of the "pressure on [her] back and the pressure on [her] shoulders and [her] neck"; has "difficulty holding [her] neck in a fixed position"; and can lift and carry 10 pounds.  (A.R. 40-41.)

Plaintiff testified that she "rarely" leaves her house.  (A.R. 44.)  "[Her] mom takes [her] to church on Sundays when [she is] up to it," but she has not gone to church in the last two weeks.  (*Id.*)  She further testified that "[o]n occasion [she] will go on Wednesdays to . . . bible study[,] and when [she is] really fortunate, [she will] go to the library."  (*Id.*)

Plaintiff testified that she became unable to perform full-time work beginning in May 2008. (A.R. 34.)   Plaintiff testified, however, that she attempted to work on two occasions after May 2008.  (A.R. 32.)  Plaintiff stated that the positions were temporary, and she only worked there for a short time.  (*Id.*)  While plaintiff initially stated that she would have continued to work at the positions had they not ended, she later indicated that she was experiencing medical problems at her job, which "became a problem."[4]  (A.R. 33-34.)

## 2.  Vocational Expert's Testimony

Vocational expert Susan Allison testified at the administrative hearing.  (A.R. 45-55.)  The ALJ gave Ms. Allison two hypotheticals.   In the first hypothetical, which was based on the limitations assessed by consultative internist, John S. Godes, M.D., the ALJ posited an individual limited to lifting and/or carrying 20 pounds occasionally and 10 pounds frequently, standing and

---

[4]      Indeed, plaintiff indicated that with respect to her position in March 2009, she believes that she was terminated because her medical condition interfered with her ability to perform her duties.  (A.R. 181.)  With respect to her position in November 2008, which was a part-time position *(i.e.,* 24 hours/week), plaintiff indicated that she stopped working, because: (1) of her medical position; and (2) "the position was temporary and all . . . [she] could hand due to [her] condition."  (*Id.*)

walking for two hours out of an eight hour day, and sitting for six hours out of an eight hour day, who is required to use a cane for assistance with ambulation and avoid working at heights or around dangerous machinery.  (A.R. 48.)  Ms. Allison concluded that an individual with the hypothetical limitations could not perform any of plaintiff's past relevant work.  However, Ms. Allison concluded that such an individual could perform the jobs of receptionist and clerk typist.  (A.R. 48-50.)

In the second hypothetical, which was based on the limitations opined by State agency physician, Charles Friedman, M.D., the ALJ posited an individual who requires a cane for ambulation and is limited to:  lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; standing and walking for two hours; occasional climbing of ramps and stairs; occasional balancing, stooping, kneeling, crouching, and crawling; no climbing of ladders, ropes, or scaffold; and no exposure to extreme cold, wetness, noise, and hazards such as machinery and heights.  (A.R. 50.)  Ms. Allison concluded that an individual with the hypothetical limitations could not perform any of plaintiff's past relevant work.  (*Id.*)  However, Ms. Allison concluded that such an individual could perform the jobs of receptionist and clerk typist.  (A.R. 50, 53.)

Plaintiff's attorney asked Ms. Allison whether an individual with the restrictions contained in hypothetical one coupled with the additional limitation of needing to get up and walk around every half an hour due to dizziness or back pain would be able to perform the jobs described above.[5]  (A.R. 52.)  Ms. Allison responded that "the jobs would be eroded so much that you wouldn't have [a] viable labor source.  Because every 30 minutes is just too often."  (A.R. 52-53.)

///

///

_____

[5]    Plaintiff's counsel included this additional limitation based on plaintiff's testimony at the administrative hearing, in response to his questioning, that she needs to change positions "every 20 minutes to half and hour or so," because "of the pressure on [her] low back and the pressure on [her] shoulders and [her] neck."  (A.R. 40.)  Additionally, plaintiff testified that, after changing positions, she needs to "get up and stretch and walk around."  (*Id.*)

## IV.  SUMMARY OF ADMINISTRATIVE DECISION

In his May 27, 2011 decision, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through March 31, 2013, and plaintiff has not engaged in substantial gainful activity since May 1, 2008, the alleged onset date of her disability. (A.R. 13.)   The ALJ determined that plaintiff has the severe impairments of Meniere's disease/vertigo, neck and back sprain/strain, diabetes mellitus, and fibromyalgia. (*Id.*)  The ALJ determined, however, that plaintiff's impairments of obesity and bipolar disorder are not severe.[6] (A.R. 13-14.)

After considering plaintiff's impairments, the ALJ found that "[plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR [§§] 404.1520(d), 404.1525 and 404.1526 )."  (A.R. 15.)  In pertinent part, the ALJ determined that, contrary to the opinion of plaintiff's treating physician, plaintiff did not meet or equal Listing 2.07 due to her Meniere's disease.  Specifically, the ALJ noted that the "evidence does not establish frequent attacks of balance disturbance, tinnitus, and progressive loss of hearing as required under Listing 2.07." (*Id.*)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a).  (A.R. 15.) Specifically, the ALJ found that:  "[plaintiff] can lift and or carry 20 pounds occasionally and 10 pounds frequently; she can stand and or walk 2 hours out of an 8-hour day; she can sit for 6 hours out of an 8-hour day[;] she must use a cane for assistance with ambulation for all

---

[6]     Although not raised by the parties, it does not appear that the ALJ assessed plaintiff's headaches/migraines and complaints of blurred and double vision, which are well-documented throughout the medical record. Accordingly, as this case is being remanded for this reasons discussed *infra*, the ALJ should make sure he addresses *all* plaintiff's alleged impairments.

distances, and this is a permanent requirement; and she must avoid heights and dangerous machinery." (*Id.*)  In making this finding, the ALJ considered the subjective symptom testimony of plaintiff, which the ALJ found was not entirely credible, as well as the medical evidence and opinions of record.

Based on plaintiff's age, education,[7] work experience, and RFC, as well as the testimony of the vocational expert, the ALJ determined that, prior to June 1, 2011, plaintiff was capable of performing her past relevant work as a billing and data entry clerk, because "[t]his work did not require the performance of work-related activities precluded by [plaintiff]'s [RFC]."  (A.R. 20.) Beginning on June 1, 2011, however, the ALJ determined that plaintiff had the RFC to perform only light work as defined in 20 C.F.R. § 404.1567, with limitations in her right hand manipulation and right shoulder use.  (*Id.*)  After considering plaintiff's age,[8] education, work experience, and RFC as well as the testimony of the vocational expert, the ALJ determined that plaintiff could not return to her past relevant work, but plaintiff could perform "jobs existing in significant numbers in the national economy," including those of receptionist and clerk typist.  (A.R. 23.)  Accordingly, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, from May 1, 2008 , the alleged onset date, through May 27, 2011, the date of his decision. (A.R. 24.)

## V.  STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is "'such relevant evidence

---

[7]     The ALJ determined that plaintiff "has at least a high school education and is able to communicate in English."  (A.R. 21.)

[8]     On June 1, 2011, plaintiff became an individual of advanced age.  (A.R. 21.)

as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; *see also* Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* Burch, 400 F.3d at 679.

## VI. DISCUSSION

Plaintiff asserts four sources of error. (Joint Stipulation ("Joint Stip.") at 2.) First, plaintiff claims that the ALJ failed to properly assess her subjective symptom testimony. Second, plaintiff

claims that the ALJ failed to properly consider her back impairment.  Third, plaintiff claims the ALJ failed to properly consider the opinion of her treating physician, Andrew Siskind, M.D, that plaintiff met and/or equaled Listing 2.07.  Lastly, plaintiff claims that the ALJ failed to properly consider the opinion of her treating psychiatrist, Geoffrey DiBella, M.D.  As plaintiff's first and second claims are related, and her third and fourth claims are related, these related claims will be addressed together.

**A.**     **The ALJ Failed To Provide Clear and Convincing Reasons For Discrediting Plaintiff's Subjective Symptom Testimony And Should Revisit His Assessment Of Plaintiff's Back Impairment(s) On Remand.**

Once a disability claimant produces objective medical evidence of an underlying impairment that is reasonably likely to be the source of claimant's subjective symptom(s), all subjective testimony as to the severity of the claimant's symptoms must be considered.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); *see also* 20 C.F.R. § 404.1629(a) (explaining how pain and other symptoms are evaluated).  "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."  Robbins, 466 F.3d at 883.  The factors to be considered in weighing a claimant's credibility include:   (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains.  *See* Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also* 20 C.F.R. § 404.1529(c).

After considering plaintiff's testimony, the ALJ cited no evidence of malingering by plaintiff

10

and concluded that "[plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 19.)  However, the ALJ determined that "[plaintiff]'s statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the [RFC] assessment." (*Id.*)  Given the absence of malingering, the ALJ's reasons for finding that plaintiff is not credible with respect to her subjective symptom testimony must be "clear and convincing."

In his decision, the ALJ cited three reasons for rejecting plaintiff's subjective symptom testimony.  First, the ALJ rejected plaintiff's subjective symptom testimony, because "[plaintiff] has described daily activities which are not limited to the extent one would expect, given [her] complaints of disabling symptoms and limitations." (A.R. 20.)  Specifically, the ALJ noted that "[w]hile [plaintiff] has noted some activities that she can no longer do, such as playing the piano and needlework, she is still able to do quite a few household chores, attend church, watch television, and use the computer for social networking." (*Id.*)  In so noting, however, the ALJ failed to note plaintiff's qualifying language that she only performs these activities when she is having a "good" day.  *See* Reddick v. Chater, 157 F.3d 715, 723 (9th Cir. 1998) (reversing and remanding case, because ALJ's characterization of the record was "not entirely accurate regarding content or tone"); *see also* Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (noting that it was error for the ALJ to ignore or misstate competent evidence in the record to justify his conclusion).  Further, the ALJ failed to explain *how* plaintiff's activities, which are performed only when plaintiff is having a "good" day, are contrary to her allegedly disabling subjective symptom complaints.  *See* Reddick, 157 F.3d at 722 (noting that only if the level of activity was inconsistent with claimant's claimed limitations would the activity have any bearing on claimant's credibility).  In addition, "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001).  "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where

1   it might be impossible to rest periodically or take medication." Smolen v. Chater, 80 F.3d 1272,
2   1283 n.7 (9th Cir. 1996).  As such, the ALJ's first reason for rejecting plaintiff's subjective
3   symptom testimony is not clear and convincing.
4
5       Second, the ALJ rejected plaintiff's subjective symptom testimony, because "there is little
6   medical evidence of treatment for [her] back pain," and plaintiff has not "seen a specialist for her
7   back or been advised that she needs surgery."  (A.R. 20.)  As an initial matter, while the ALJ
8   characterizes plaintiff's back impairment as a "back sprain/strain," the evidence of record suggests
9   a more significant impairment(s).  For example, x-ray reports of plaintiff's cervical spine showed
10  "spondylosis with *moderately advanced* disc degeneration at C5-6 and C6-7."  (A.R. 17; emphasis
11  added.)  Additionally, x-ray reports of her lumbar spine showed "minimal spondylosis with mild
12  disc degeneration and facet joint arthritis at L4-5 and *moderate* degeneration and facet joint
13  arthritis at L5-S1."  (*Id.*)  Indeed, the consultative examining internist, John S. Godes, M.D., to
14  whose opinion the ALJ gave "significant weight" (A.R. 20-21), opined that plaintiff has
15  osteoarthritis and discogenic disease of both the cervical and lumbar spine (A.R. 641).  The ALJ
16  further discredits plaintiff's subjective symptom complaints about her back pain, because she has
17  received little treatment and/or has not seen a specialist.  However, plaintiff has reported severe
18  financial hardship (A.R. 497) as well as difficulty obtaining medical insurance (A.R. 42-43).  The
19  Ninth Circuit has "proscribed the rejection of a claimant's complaints for lack of treatment when
20  the record establishes that the claimant could not afford it." Regennitter v. Comm'r of SSA, 166
21  F.3d 1294, 1297 (9th Cir. 1999).  In addition, the ALJ discredits plaintiff's subjective symptom
22  testimony, because back surgery has not been recommended.  As noted *supra*, however,
23  plaintiff's back impairment, which the ALJ appears to have mischaracterized, appears to be
24  degenerative and/or arthritic in nature and, thus, surgery may not be an appropriate or
25  recommended course of treatment.  For the reasons set forth above, the ALJ's reasons for
26  rejecting plaintiff's testimony regarding her back pain are not clear and convincing, as required.
27
28      Third, the ALJ found plaintiff's subjective symptom complaints to be not credible, because

she worked after the alleged onset date. (A.R. 20.)  In weighing a claimant's credibility, an ALJ may consider the claimant's failed efforts to work.  SSR 96-7p, 1996 SSR LEXIS 4; *see* Thomas, 278 F.3d at 958-59.  However, "[i]t does not follow from the fact that a claimant tried to work for a short period of time and, because of [her] impairments, *failed*, that [she] did not then experience pain and limitations severe enough to preclude [her] from *maintaining* substantial gainful employment." Lingenfelter v. Astrue, 504 F.3d 1028, 1038 (9th Cir. 2007) (emphasis in original).  As noted above, plaintiff worked from November 20, 2008, until December 5, 2008, for 24 hours per week, and she worked again from March 1, 2009, to April 1, 2009, for 40 hours per week.  (A.R. 13.)  At the administrative hearing, although plaintiff initially testified that she "probably" could have continued to work at the jobs had they not ended, she later testified that her impairments were starting to impact her job performance.  (A.R. 33-34.)  Indeed, as noted by the ALJ elsewhere in his decision, plaintiff believed that her job in 2008 "was temporary and all that she could handle due to her condition." (A.R. 13.)  With respect to her job in 2009, the ALJ noted plaintiff's belief that "her medical condition affected the performance of her duties and that she was terminated for this reason." (*Id.*)  As such, plaintiff's failed attempts at working do not, contrary to the ALJ finding, constitute a clear and convincing reason for rejecting her subjective symptom testimony.

**B.   The ALJ Failed To Give Specific And Legitimate Reasons For Rejecting The Opinions Of Plaintiff's Treating Physicians And Should Revisit His Assessment Of Whether Plaintiff Meets Or Equals Listing 2.07 On Remand.**

1.   Legal Standard

An ALJ is obligated to take into account all medical opinions of record.  20 C.F.R. § 404.1507(d).  It is the responsibility of the ALJ to resolve conflicts in medical testimony and analyze evidence.  Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  In the hierarchy of

physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); *see also* 20 C.F.R. § 404.1527(d).

The opinions of treating physicians are entitled to the greatest weight, because the treating physician is hired to cure and has a better opportunity to know and observe the claimant. Magallanes, 881 F.2d at 751.   When a treating or examining physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).   When contradicted by another doctor, a treating or examining physician's opinion may only be rejected if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record. *Id.*; *see also* Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008); Orn, 495 F.3d at 632.

"The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of . . . a treating physician." Lester, 81 F.3d at 831; *see* Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990) (finding that the nonexamining physician's opinion "with nothing more" did not constitute substantial evidence).   However, "[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence." Andrews, 53 F.3d at 1041. Independent clinical findings include "(1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, or (2) findings based on objective medical tests that the treating physician has not herself considered." Orn, 495 F.3d at 632 (internal citations omitted).

///

///

///

///

## 2. Dr. Siskind - Treating Physician

Plaintiff claims that the ALJ failed to consider properly the opinion of Dr. Siskind that plaintiff meets and/or equals Listing 2.07. (Joint Stip. at 2-7, 12-14.)

On April 17, 2011, based on his treatment of plaintiff, Dr. Siskind opined that plaintiff "satisfies the criteria of the rule and/or has an impairment(s) that is[/are] medically equal in severity and duration to the criteria set forth under Rule 2.07 for Meniere's disease." (A.R. 691.) Dr. Siskind specifically noted that plaintiff has had "permanent unsteadiness" since having transtympanic gentamicin therapy in 2009, and "she continues to have episodes of vertigo as of the last time [he] saw her for this problem [in February 2010]." (*Id.*)

In his decision, the ALJ afforded "little weight" to the opinion of Dr. Siskind because: (1) of the nature and frequency of his treatment history with plaintiff; (2) "[t]he determination of disability is an issue reserved to the Commissioner and, as such, is an administrative finding that directs the determination or decision of disability"; and (3) his opinion is not supported by the objective evidence of record. (A.R. 15, 21.)

The ALJ's first reason for affording less weight to Dr. Siskind's opinion -- *to wit*, because of the nature and frequency of his treatment history with plaintiff -- is unconvincing. (A.R. 21.) In his decision, the ALJ noted that while Dr. Siskind is plaintiff's treating physician, "there have been significant gaps in his treatment of [plaintiff]." (*Id.*) For example, the ALJ noted that "Dr. Siskind . . . state[d] in his note of April 2011 that he last saw [plaintiff] over one year ago, in February 2010." (*Id.*) It is well established that an ALJ may consider the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician when assessing a treating physician's medical opinion. 20 C.F.R. § 404.1527(c)(2)(I). In this case, however, the gap in plaintiff's treatment history with Dr. Siskind appears to be a result of plaintiff's lack of insurance and inability to afford treatment, as discussed *supra,* and thus, may

not be an appropriate reason for affording less weight to his opinion.  Further, prior to the above-noted gap in treatment, plaintiff had been treated regularly by Dr. Siskind, *see, e.g.,* A.R. 567-68 (2/18/08); A.R. 570-71 (2/28/08); A.R. 572-73 (3/28/08); A.R. 574-75 (4/28/08); A.R. 580-81 (8/14/08); A.R. 582-83 (11/4/08); A.R. 584-85 (11/25/08); A.R. 586-87 (12/31/08); A.R. 588-89 (2/5/09); A.R. 592-93 (5/5/09); A.R. 594-95 (8/10/09); A.R. 590-91 (A.R. 9/9/09); A.R. 600-01 (11/9/09); A.R. 602-03 (11/24/09), and the Regulations "still require[] deference to the treating physician's opinion." Orn, 495 F.3d at 633 (citing 20 C.F.R. § 404.1527; SSR 96-2p, 1996 SSR LEXIS 9).  Moreover, and significantly, the ALJ afforded greater weight to the opinions of doctors who had *no* treating history with plaintiff.  The ALJ fails to explain why a regular treatment history with a gap in treatment negatively impacted the weight afforded to the opinion of Dr. Siskind, but the lack of *any* treatment history had no effect on the weight afforded to the opinions of the non-treating doctors.  As such, the ALJ's first reason cannot constitute a specific and legitimate reason for affording less weight to the opinion of Dr. Siskind.

The ALJ's second reason for affording "little weight" to the opinion of Dr. Siskind -- *to wit*, that "[t]he determination of disability is an issue reserved to the Commissioner" -- is misguided.  While it is true that a treating physician's opinion on the matter of ultimate disability or, in this case, whether plaintiff meets or equals a Listing is not entitled to special weight, "a treating physician's *medical* opinions are generally [entitled] to more weight." Boardman v. Astrue, 286 Fed. Appx. 397, 399 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(d)(2)).  A medical opinion "'reflect[s] judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions." *Id.* (citing 20 C.F.R. § 404.1527(a)(2)).  In this case, beyond finding that plaintiff met and/or equaled Listing 2.07, Dr. Siskind opined that plaintiff has had "permanent unsteadiness since [having] transtympanic gentamicin [treatment in] 2009." (A.R. 691.)  In addition, Dr. Siskind noted that plaintiff "continues to have episodes of vertigo as of the last time [he] saw her for this problem in [February 2010.]" (*Id.*) Rather than affording weight to Dr. Siskind's opinion regarding plaintiff's

"permanent unsteadiness" and continuing episodes of vertigo, the ALJ appears to have rejected it outright on the ground that Dr. Siskind also rendered an opinion regarding ultimate disability. While this may constitute a specific reason for rejecting Dr. Siskind's opinion, it is not a legitimate one.

The ALJ also gives "little weight" to the opinion of Dr. Siskind that plaintiff's Meniere's disease meets and/or equals Listing 2.07, because the ALJ asserts that the objective evidence of record does not support Dr. Siskind's opinion. (*See* A.R. 15, 21.) Listing 2.07, which covers disturbance of labyrinthine-vestibular function, including Meniere's disease, requires "a history of frequent attacks of balance disturbance, tinnitus, and progressive hearing loss" as well as disturbed function of vestibular labyrinth, demonstrated by caloric or other vestibular tests, and hearing loss established by audiometry. 20 C.F.R. Pt. 404, subpt. P, App. 1 § 2.07. The ALJ affords little weight to Dr. Siskind's opinion, because "[t]he evidence does not establish frequent attacks of balance disturbance, tinnitus and progressive loss of hearing as required under Listing 2.07." (A.R. 15.) After making this statement, the ALJ only addresses plaintiff's failure to meet the requirement of progressive hearing loss. (*Id.*) In support of his finding, the ALJ notes that plaintiff "underwent an audiological evaluation in 2006 that showed she had low to normal hearing, with appropriate and normal speech reception and recognition . . . , and there is no medical evidence of record of progressive hearing loss since that date." (*Id.*) The ALJ further notes that "[i]n September 2009, [plaintiff] reported her hearing was 'great.'" (*Id.*)

It is well established that an ALJ may reject a medical opinion when it is "unsupported by the record as a whole." Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2003); *see* Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602-03 (9th Cir. 1999) (a medical opinion's inconsistency with the overall record constitutes a legitimate reason for discounting the opinion.) To reject an opinion as inconsistent with the medical record, the "ALJ must do more than offer his conclusions." Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988). The ALJ has a burden to "set[] out a detailed and thorough summary of the facts and conflicting

1  clinical evidence, stating his interpretation thereof, and making findings." <u>Cotton v. Bowen</u>, 799

2  F.2d 1403, 1408 (9th Cir. 1983).

3

4        Contrary to the ALJ's contention, there appears to be evidence showing progressive hearing

5  loss since plaintiff's audiological evaluation in 2006.  For example, in 2006, plaintiff's hearing test

6  revealed "mild, bilateral high frequency" hearing loss, which was noted as being "greater than

7  expected [for someone of plaintiff's] age." (A.R. 268.)  On August 4, 2009, plaintiff's hearing test

8  revealed mild to severe hearing loss.  (A.R. 533.)  On January 12, 2010, plaintiff's hearing test

9  revealed mild to moderate to severe hearing loss.  (A.R. 523.)  In addition, notwithstanding

10  plaintiff's comments regarding her hearing, plaintiff's speech audiometry score has decreased over

11  time.  (*See, e.g.,* A.R. 268 (Jan. 2006 - 100% in both left and right ears); A.R. 533 (Aug. 2009 -

12  96% in right ear and 92% in left ear); A.R. 523 (Jan. 2010 - 92% in right ear and 88% in left

13  ear).)  Thus, to the extent that the ALJ rejected Dr. Siskind's opinion on the basis that there was

14  no objective evidence to support his finding that plaintiff met and/or equaled the requirement of

15  progressive hearing loss for Listing 2.07, the ALJ's reasoning is unavailing.

16

17        Moreover, it is unclear whether the opinion of State agency physician, Charles Friedman,

18  M.D., upon whose opinion the ALJ relied in finding that plaintiff did not meet or equal Listing 2.07

19  is supported by substantial evidence.  As an initial matter, and as plaintiff properly notes, it does

20  not appear that Dr. Friedman specifically considered whether plaintiff met and/or equaled Listing

21  2.07.  Further, and significantly, Dr. Friedman did not have the opportunity to review Dr. Siskind's

22  opinion that plaintiff met and/or equaled Listing 2.07.

23

24        Accordingly, for the aforementioned reasons, the ALJ failed to properly consider the opinion

25  of Dr. Siskind.  In addition, as it appears that there may be evidence of progressive hearing loss,

26  the ALJ should reassess whether plaintiff meets and/or equals Listing 2.07 as opined by Dr.

27  Siskind.

28  ///

1   ///

2           3.   Dr. DiBella - Treating Psychiatrist

3

4           On May 7, 2010, Dr. DiBella, who had been treating plaintiff since November 2008,

5   completed a Mental Disorder Questionnaire Form in which he diagnosed plaintiff with Bipolar II

6   disorder.  (A.R. 631-35.)  Dr. DiBella noted that plaintiff has significant depression and anxiety.

7   (A.R. 631.)  Dr. DiBella opined that plaintiff's ability to adapt to work or work-like situations is

8   poor and that her prognosis is poor.  (A.R. 22, 634-35.)  Dr. DiBella further opined that plaintiff's

9   condition is not likely to improve.  (*Id.*)

10

11          In his decision, the ALJ gave reduced weight to the opinion of Dr. DiBella and gave

12   significant weight to the opinion of the State agency psychiatric consultant, because:  (1) the

13   opinion of Dr. DiBella is "inconsistent with the record as a whole"; (2) the opinion of Dr. DiBella

14   is "internally inconsistent"; and (3) Dr. DiBella "had a fairly short treatment history with

15   [plaintiff]." (A.R. 22.)

16

17          The ALJ's first reason for affording less weight to the opinion of Dr. DiBella is impermissibly

18   conclusory and provides no specific reference as to how Dr. DiBella's opinion is inconsistent with

19   the record as a whole.  *See* Regennitter, 166 F.3d at 1299 (noting that "conclusory reasons will

20   not justify an ALJ's rejection of a medical opinion"); Embrey, 849 F.2d at 421-22 (9th Cir. 1988)

21   ("To say that medical opinions are not supported by sufficient objective findings or are contrary

22   to the preponderant conclusions mandated by the objective findings does not achieve the level

23   of specificity our prior cases have required . . . .   The ALJ must do more than offer his

24   conclusions. He must set forth his own interpretation and explain why they, rather than the

25   doctors', are correct.")  As such, the ALJ's reasoning does not constitute a specific and legitimate

26   reason for rejecting Dr. DiBella's opinion.

27

28          The ALJ's second reasons for rejecting Dr. DiBella's opinion -- *to wit*, that Dr. DiBella's

19

1   opinion was "internally inconsistent" -- is unavailing.  In his decision, the ALJ found Dr. DiBella's

2   opinion to be "internally inconsistent," because "his last treatment note with [plaintiff] states that

3   she appears 'less labile.'"   (A.R. 22.)   As with his first reason, however, the ALJ provides no

4   further explanation, and it is entirely unclear how Dr. DiBella's finding conflicts with his previous

5   findings. Thus, the ALJ's reasoning is not specific and legitimate.

6

7        Third, the ALJ gave "reduced weight" to the opinion of Dr. DiBella, because he "had a fairly

8   short treatment history with [plaintiff]."  (A.R. 22.)  As noted *supra*, while an ALJ may properly

9   consider the "[l]ength of the treatment relationship and the frequency of examination" by the

10  treating physician when assessing a treating physician's medical opinion, 20 C.F.R. §

11  404.1527(c)(2)(i), the ALJ in this case favored the opinions of doctors who had *no* treating history

12  with plaintiff.  While Dr. DiBella did not have an extensive history of treating plaintiff, he had at

13  least treated plaintiff on multiple occasions.  Significantly, the ALJ never explained why a short

14  treatment history negatively impacted the weight afforded to the opinion of Dr. DiBella, but the

15  lack of *any* treatment history had no affect on the weight afforded the opinions of the non-

16  treating doctors.  Accordingly, the ALJ's third reason is not a specific and legitimate reason for

17  affording less weight to the opinion of Dr. DiBella.

18

19       Accordingly, for the aforementioned reasons, the ALJ failed to properly reject the opinion

20  of Dr. DiBella.[9]

21

22       **C.    Remand Is Required.**

23

24       The decision whether to remand for further proceedings or order an immediate award of

25  benefits is within the district court's discretion.  Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th

26

27       [9]     Although the Commissioner now offers other reasons to explain the ALJ's rejection
    of Dr. DiBella's opinion, the Court cannot entertain these post hoc rationalizations. *See, e.g.,* Orn,
28  495 F.3d at 630 ("We review only the reasons provided by the ALJ in the disability determination
    and my not affirm on a ground upon which he did not reply.").

Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").  However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate.  *Id.* at 1179-81.

Remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors.  On remand, the ALJ must correct the above-mentioned deficiencies and errors.

**VII.  CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

DATED:  March 28, 2014

_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE